**Nos. 24-1109 (L); 24-1144**

In the

# United States Court of Appeals
## For the Federal Circuit

––––––––––––––––––

HONEYWELL INTERNATIONAL INC.; HAND HELD PRODUCTS, INC.; METROLOGIC INSTRUMENTS, INC.,

*Plaintiffs-Appellants,*

v.

OPTO ELECTRONICS CO., LTD.,

*Defendant-Cross-Appellant.*

––––––––––––––––––

On Appeal from the United States District Court
for the Western District of North Carolina
Case No. 3:21-cv-506-KDB-DCK

––––––––––––––––––

**MOTION TO DISMISS OR TRANSFER APPEALS
TO U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT**

––––––––––––––––––

Brian D. Schmalzbach
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
bschmalzbach@mcguirewoods.com

*Counsel for OPTO Electronics Co.,
Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1109; 24-1144

**Short Case Caption** Honeywell International Inc. v. OPTO Electronics Co., Ltd.

**Filing Party/Entity** OPTO Electronics Co., Ltd.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date:  11/24/2023

Signature:  /s/ Brian D. Schmalzbach

Name:  Brian D. Schmalzbach

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| OPTO Electronics Co., Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable       ☐ Additional pages attached

| | | |
|---|---|---|
| McGuireWoods LLP - Robert A. Muckenfuss | McGuireWoods LLP - Tyler T. VanHoutan | Reichman Jorgensen Lehman & Feldberg LLP - Christine E. Lehman |
| McGuireWoods LLP - Zachary L. McCamey | YorkMoodyFaulkner - York M. Faulkner | |
| McGuireWoods LLP - Jessica L. O'Brien | Reichman Jorgensen Lehman & Feldberg LLP - Connor S. Houghton | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)     ☐ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable       ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................3

ARGUMENT ........................................................................................11

I.      Federal Circuit jurisdiction is limited to claims or counterclaims arising under an "Act of Congress relating to patents." .....................11

II.     No patent Act creates any cause of action in OPTO's counterclaims..................................................................................14

III.    No counterclaim depends on resolution of any substantial question under any patent Act. ................................................15

    A.      Substantial question jurisdiction is narrow and rare...................16

    B.      There is no substantial question of patent validity or enforceability here. .............................................................19

        1.      This appeal presents a factbound, backward-looking question of patent misuse......................................19

        2.      This appeal presents no question of patent enforceability. ........................................................22

CONCLUSION .....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aurafin-OroAmerica, LLC v. Fed. Ins. Co.,*
188 F. App'x 565 (9th Cir. 2006) ....................................................22

*B. Braun Med., Inc. v. Abbott Labs.,*
124 F.3d 1419 (Fed. Cir. 1997) ......................................................14

*Bd. of Regents Univ. of Tex. v. Nippon Tel. & Tel. Corp.,*
414 F.3d 1358 (Fed. Cir. 2005) ......................................................23

*Boggild v. Kenner Prods., Div. of CPG Prods. Corp.,*
776 F.2d 1315 (6th Cir. 1985) ........................................................13

*Brulotte v. Thys Co.,*
379 U.S. 29 (1964) ..........................................................................23

*Chandler v. Phoenix Servs. LLC,*
1 F.4th 1013 (Fed. Cir. 2021) .........................................................23

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988) ...........................................................11, 15, 24

*Clausen Co. v. Dynatron/Bondo Corp.,*
889 F.2d 459 (3d Cir. 1989) ...........................................................13

*Cnty. Materials Corp. v. Allan Block Corp.,*
502 F.3d 730 (7th Cir. 2007) .......................................................2, 12

*Compton v. Metal Prods.,*
453 F.2d 38 (4th Cir. 1971) ............................................................13

*DuVal Wiedmann, L.L.C. v. Inforocket.com, Inc.,*
374 F. App'x 482 (5th Cir. 2010) ...................................................20

*E. Venetian Blind Co. v. Acme Steel Co.,*
188 F.2d 247 (1951) ...................................................................13, 22

v

*EZ Dock v. Schafer Sys., Inc.*,
    276 F.3d 1347 (Fed. Cir. 2002) ........................................................................17

*Federal Trade Commission v. AbbVie, Inc.*,
    976 F.3d 327 (3d Cir. 2020) ..............................................................16, 18, 19

*Gunn v. Minton*,
    568 U.S. 251 (2013) .............................................................................................16

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
    535 U.S. 826 (2002) ............................................................................................13

*Illinois Tool Works, Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006) ......................................................................................1, 14

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) .........................................................................13

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
    109 F.3d 1567 (Fed. Cir. 1997) ......................................................................20

*Kimble v. Marvel Ent., LLC*,
    576 U.S. 446 (2015) ...............................................................................8, 12, 23

*In re Lipitor Antitrust Litigation*,
    855 F.3d 126 (3d Cir. 2017) ............................................................................11

*Loughrin v. United States*,
    573 U.S. 351 (2014) ............................................................................................12

*Meehan v. PPG Inds., Inc.*,
    802 F.2d 881 (7th Cir. 1986) ..........................................................................13

*Old Dominion Elec. Co-op v. PJM Interconnection, Inc.*,
    24 F.4th 271 (4th Cir. 2022) ...........................................................................24

*Princo Corp. v. Int'l Trade Com'n*,
    616 F.3d 1318 (Fed. Cir. 2010) ......................................................................14

*Scheiber v. Dolby Labs., Inc.*,
    293 F.3d 1014 (7th Cir. 2002) ........................................................................13

vi

*Seed Co. Ltd. v. Westerman*,
  832 F.3d 325 (D.C. Cir. 2016) .......................................................21

*Westlake Services, LLC v. Credit Acceptance Corp.*,
  800 F. App'x 505 (9th Cir. 2020) ................................................21

## Statutes

28 U.S.C. § 1291 ...............................................................................2, 9

28 U.S.C. § 1295(a)(1) ...........................................1, 3, 11, 12, 22, 25

28 U.S.C. § 1331 ...............................................................................12

35 U.S.C. § 102(b) ............................................................................16

35 U.S.C. § 271 ..........................................................................15, 18

Leahy-Smith America Invents Act,
  125 Stat. 331 § 19(b) (Sept. 16, 2011) ........................................13

## Other Authorities

9 Chisum on Patents - Patent Misuse Reform ...............................15

14C Charles A. Wright et al., *Federal Practice & Procedure* § 3734
  (rev. 4th ed. 2021) .......................................................................24

Patrick A. Doody, *Comprehensive Legislative History of the Leahy-
  Smith America Invents Act* ..........................................................13

Robert Matthews, 4 Annotated Patent Digest § 28:3 .....................22

## INTRODUCTION

The Fourth Circuit—and not this Court—has jurisdiction over these appeals concerning an alleged breach of contract and various contract defenses. The only basis for Plaintiff-Appellant Honeywell International Inc.'s duplicative notice of appeal to this Court is that in one of those contract defenses, Defendant OPTO Electronics Co. raised "the judicially created patent misuse doctrine," *Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 31 (2006), to prevent Honeywell from enforcing its misconstruction of a licensing agreement under Delaware law. But a patent misuse defense does not arise under any "Act of Congress relating to patents or plant variety protection." 28 U.S.C. § 1295(a)(1). And this appeal involves no claim of patent infringement, no claim that any patent is invalid, no attempt to render any patent unenforceable, and nothing else that triggers this Court's jurisdiction under § 1295(a)(1). The only patent misuse defense presented here—that part of a licensing agreement is unenforceable—has always been, and continues to be, within the jurisdiction of the regional courts of appeals.

In fact, Honeywell agreed until just now. Honeywell filed its notice of appeal invoking the Fourth Circuit's jurisdiction over three months ago, followed by an amended notice of appeal reiterating that Court's

1

jurisdiction. It filed a docketing statement invoking the Fourth Circuit's jurisdiction under 28 U.S.C. § 1291, participated in the Fourth Circuit mediation program, and filed a status report stating its plan to file its principal brief in the Fourth Circuit "in accordance with the current Briefing Order." CA4 Dkt. 21 (Oct. 3, 2023). Yet *one day before its opening brief deadline in the Fourth Circuit*, Honeywell moved to transfer the Fourth Circuit appeals to this Court.

Honeywell was right the first time. This case does not arise under any patent act; it is a breach of contract case. The patent misuse question here would prevent enforcement of certain provisions of a *contract*, not enforcement of any *patent*. At most, the patent misuse issue makes this one of the "non-patent patent cases" that "falls within the jurisdiction of the regional courts of appeals rather than the Federal Circuit." *Cnty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 732 (7th Cir. 2007).

So this Court should dismiss Honeywell's appeal and OPTO's protective cross-appeal for lack of appellate jurisdiction. In the alternative,

this Court should transfer those appeals to the Fourth Circuit where they belong.[1] Honeywell opposes this Motion and intends to file an opposition.

## BACKGROUND

The Settlement and License Agreement between Honeywell and OPTO required OPTO to pay royalties on the sales of certain barcode scanning products called "2D Barcode Products." Agreement § 1.4 (Dkt. 163-2). In contrast, products defined as "1D Barcode Products" are not royalty-bearing products. *Id.* § 1.5. Instead, under the Agreement, Honeywell conveyed a covenant not to sue to OPTO for its sales of all 1D Barcode Products. *Id.* § 2.4. Honeywell's Complaint asserted one count for breach of contract, alleging that OPTO failed to pay royalties on sales of all covered 2D Barcode Products. Complaint ¶¶ 30-40 (Dkt. 1).

The crux of the parties' disagreement is over which OPTO products are "2D Barcode Products." OPTO sells two distinct kinds of barcode

---

[1] OPTO plans to notify the Fourth Circuit in its forthcoming opposition to Honeywell's motion to transfer that the Fourth Circuit may wish to defer resolution of Honeywell's motion until this Court resolves OPTO's motion to transfer. That course would avoid the possibility of conflicting jurisdictional determinations and make sense in light of this Court's frequent experience determining the scope of its jurisdiction under § 1295(a)(1) (as amended).

scanning products. Its second-generation 2D imaging scanners use cameras (2D image sensors) and software to capture and decode electronic two-dimensional images of barcode symbols, including complex two-dimensional symbols like QR code. OPTO Resp. to Honeywell's MSJ on Contract Interpretation 2-3 (Dkt. 135). The parties do not dispute that these products are 2D Barcode Products under the Agreement, and OPTO timely paid all applicable royalties on sales of these second-generation products. OPTO Breach of Contract MSJ 3-4 (Dkt. 133).

The dispute instead focuses on OPTO's legacy first-generation laser scanners that, by contrast, measure varying light intensities reflected from a barcode's surface during each laser scan to decode simple barcode symbols based on the measured widths of the alternating black bars and white spaces (the black bars absorb and reflect less light than the white spaces). OPTO Resp. to Honeywell's MSJ on Contract Interpretation 2-3. OPTO's laser scanners decode only symbols that use alternating bars and spaces to encode data, which can be either single row symbols like UPC symbols or mutli-row symbols. *Id.* at 2-4. OPTO's laser scanners do not decode complex symbols like QR code that utilize entirely different data encoding schemes. *See id.* at 4-11. Although the products do not have a 2D image sensor, Honeywell

4

contended that OPTO's laser scanners are nevertheless 2D Barcode Products based solely on their operability to decode multi-row symbols. *Id.* at 12-13. Without conceding that multi-row symbols are "two-dimensional barcode symbologies" within the meaning of the Agreement and to limit its potential liability, OPTO disabled the multi-row symbol decoding function in its laser scanners. OPTO Patent Misuse MSJ 6 (Dkt. 169). Since then, the laser scanners sold by OPTO decode only single-row symbols, and Honeywell makes no royalty demand on OPTO's laser scanner sales now that the multi-row symbol decoding function is disabled.

Honeywell nevertheless sued OPTO, demanding royalties on OPTO's prior sales of laser scanners that were operable to decode multi-row symbols. OPTO contends that the text of the agreement and subsequent contracting history confirm that even OPTO laser scanners that decode multi-row symbols are 1D Barcode Products and *not* 2D Barcode Products because (1) the devices do not have a 2D image sensor and (2) multiple rows of alternating bars and spaces are not "two-dimensional barcode symbologies" within the meaning of the Agreement. OPTO Resp. to Honeywell's MSJ on Contract Interpretation 19-20. If OPTO's interpretation

prevails on appeal, then there is no breach of contract and there is no need to apply the patent misuse doctrine.

The patent misuse defense only comes into play under Honeywell's asserted reading of the contract as adopted by the district court. According to Honeywell, whether the laser scanners are 1D Barcode Products covered by the covenant not to sue depends entirely upon their multi-row symbol decoding function—if turned on, then the products are 2D Barcode Products and there is no protection from the covenant not to sue but if turned off, then the products are 1D Barcode Products and the covenant applies. OPTO Patent Misuse MSJ 6. Honeywell therefore conditions the covenant not to sue and OPTO's freedom to use any Honeywell patented technology in its 1D Barcode Products on a single product function—a laser scanner's operability to decode multi-row symbols. *See id.* at 6-7.

If, as Honeywell contends, OPTO's laser scanners are, in fact, 2D Barcode Products based solely on their operability to decode multi-row symbols, then Honeywell's royalty demand results in patent misuse because Honeywell owns no active patents that preclude OPTO, or any other person, from decoding multi-row symbols with a laser scanner. *Id.* at 7. Honeywell had three such patents claiming laser decoding of multi-row symbols but

each patent either expired or was abandoned before the parties signed the Agreement. OPTO Patent Misuse MSJ 4-6. Honeywell is therefore powerless to prevent the sale of a laser scanner (or demand patent royalties) solely because the device decodes multi-row symbols.

OPTO's Answer thus raised, among other affirmative defenses, that Honeywell's interpretation of the Agreement would result in OPTO paying royalties on products (OPTO's laser scanners) otherwise protected by Honeywell's covenant not to sue *but for* the products' operability to perform a non-patented function—decoding multi-row symbols. *See id.* at Second Affirmative Defense ¶¶ 15-25. Honeywell's conditioning of its covenant not to sue on the presence or absence of non-patented product features is an unlawful extension of Honeywell's expired patents and the patents included in its covenant not to sue—and so would constitute *per se* patent misuse. Answer at 11–13. OPTO's Answer likewise included, among others, a counterclaim asserting patent misuse for the same reasons.

OPTO moved for summary judgment on *per se* patent misuse, seeking a declaration that "the royalty collection provisions of the Settlement and License Agreement [are] unenforceable" because the "'licensing agreement provides royalties for post-expiration use of a patent.'" OPTO Patent Misuse

MSJ 1-2 (quoting *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 459 (2015)). OPTO thus clarified that its patent misuse affirmative defense and counterclaim assert *per se* patent misuse under *Kimble* and that the relief it seeks is limited to an order declaring the offending contract royalty provision unenforceable. OPTO thereby disclaimed any attempt to declare any patents invalid or unenforceable due to patent misuse. *Id.* at 10 (explaining that the "appropriate remedy in the present action … is not invalidation of … any patents belonging to Honeywell"), *id.* at 11 ("OPTO respectfully requests … an order dismissing Honeywell's Complaint and declaring the royalty collection provisions of the Settlement and License Agreement unenforceable"); Opposition to Honeywell Patent Misuse MSJ at 1 (Dkt. 187) ("As Honeywell has itself repeatedly emphasized, this is a breach of contract action, and not a patent infringement action. OPTO is not challenging the enforceability of any of Honeywell's patents"); *id.* at 16 ("*OPTO does not challenge the enforceability of any patent*") (emphasis in original). Instead, the only remedy sought for patent misuse was "an order declaring that the Agreement's royalty provisions are unenforceable." OPTO Patent Misuse MSJ at 10. The district court recognized that was the only remedy OPTO sought. SJ Order 17 n.11 (Dkt. 195) ("OPTO seeks an order dismissing

8

Honeywell's Complaint in this case and declaring the royalty collection provisions of the Agreement unenforceable.").[2]

Although *Kimble* rejected rule of reason analysis for a patentee's demand for royalties on the use of expired patents, the district court held on summary judgment that there was no *per se* patent misuse. It instead required OPTO to present a rule of reason analysis of "Honeywell's economic power over such technology" at trial. SJ Order 23. Following a bench trial, the district court held that OPTO failed to demonstrate that the "license agreement had anticompetitive effects," and thus entered judgment against OPTO's patent misuse defense. *Id.* at 23; Dkt. 368 at 87-88.

Honeywell then noticed an appeal in the Fourth Circuit, which it later amended. Honeywell CA4 Notice of Appeal at 1 (Dkt. 369); Honeywell Amended CA4 Notice of Appeal (Dkt. 395). Honeywell also filed a docketing statement invoking that Court's jurisdiction under 28 U.S.C. § 1291,[3]

---

[2] To be clear, OPTO is "not seeking to avoid the payment of royalties on its '2D Barcode Products' that are not in dispute, only the approximately 50 'laser scanning' products that encompass the parties' disagreement." *Id.*

[3] Section 1291 sets forth the jurisdiction of the regional courts of appeals, explicitly excluding the Federal Circuit. 28 U.S.C. § 1291 ("The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction...").

participated in the Fourth Circuit's mediation program, and filed a status report stating its plan to file its principal brief in the Fourth Circuit "in accordance with the current Briefing Order." CA4 Dkt. 21 (Oct. 3, 2023). On October 4, 2023, OPTO filed a cross notice of appeal in the Fourth Circuit. OPTO CA4 Notice of Appeal (Dkt. 398). Then, on October 27, 2023, Honeywell filed a parallel Notice of Appeal on the alleged grounds that the Federal Circuit has jurisdiction based on the patent misuse judgment. Honeywell Fed. Cir. Notice of Appeal at 1 (Dkt. 402). On November 13, 2023—around *six weeks after* OPTO's notice of appeal on patent misuse and the day before Honeywell's opening brief was due—Honeywell moved to dismiss the Fourth Circuit appeals or transfer them to this Court. CA4 Dkt. 30.[4]

---

[4] Honeywell's dilatory request to switch appellate forums prejudices OPTO for two reasons. First, there is (for now) a non-trivial monetary judgment accruing interest. Second, OPTO risks liability for ongoing monthly contractual late fees, the imposition of which will depend on the litigation's outcome.

## ARGUMENT

I. **Federal Circuit jurisdiction is limited to claims or counterclaims arising under an "Act of Congress relating to patents."**

This Court's jurisdiction is limited to appeals in a "civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents or plant variety protection." 28 U.S.C. § 1295(a)(1). To satisfy that "arising under" test, "[i]t is not enough that patent law issues are in the air." *In re Lipitor Antitrust Litigation*, 855 F.3d 126, 145 (3d Cir. 2017).

Rather, a Federal Circuit case must "arise under" a patent act in one of two specific ways. *First*, a case arises under a patent act when such an act "creates the cause of action" asserted. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). *Second*, a case can arise under a patent act if a claim "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Id.*

Either way, § 1295(a)(1) confines this Court's jurisdiction to *statutory* patent issues. That jurisdiction extends only to cases involving a claim or compulsory counterclaim "arising under" "any *Act of Congress* relating to

patents." 28 U.S.C. § 1295(a)(1) (emphasis added). That "Act of Congress" requirement is meaningful, and ignoring it would run "afoul of the cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (cleaned up). Furthermore, the "Act of Congress" language is distinct from § 1331's extension of federal question jurisdiction to "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As the Supreme Court has "often noted," when "Congress includes particular language in one section of a statute but omits it in another … this Court presumes that Congress intended a difference in meaning." *Loughrin*, 573 U.S. at 358. By adding the "Act of Congress" language, Congress made clear its intent to confine this Court's jurisdiction to *statutory* patent claims.

The history of § 1295(a)(1) confirms that the statute does not inject nonstatutory patent-related issues like patent misuse to this Court's docket. Since the beginning of the Federal Circuit in 1982, most appellate precedent on patent misuse arose in the regional courts of appeals.[5] The 2011

---

[5] *See, e.g., Kimble v. Marvel Ent., LLC*, 576 U.S. 446 (2015) (on writ of certiorari from the Ninth Circuit); *Cnty. Materials Corp. v. Allan Block Corp.*, 502 F.3d

amendment to § 1295 was not meant to disturb that allocation of responsibility. Rather, the 2011 Leahy-Smith America Invents Act ("AIA") amended the statute to ensure that compulsory counterclaims for patent infringement—the Federal Circuit's bread and butter—would go to the Federal Circuit. *See* 125 Stat. 331 § 19(b) (Sept. 16, 2011). That amendment overruled a Supreme Court decision holding that "compulsory counterclaim[s] alleging patent infringement" were outside the Federal Circuit's jurisdiction. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 828-30 (2002). That "*Holmes Group* fix" confirming this Court's jurisdiction over all patent *infringement* claims did not disturb the regional circuits' jurisdiction over nonstatutory issues like patent misuse.[6]

---

730 (7th Cir. 2007); *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1016 (7th Cir. 2002); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1214–21 (9th Cir. 1997); *Clausen Co. v. Dynatron/Bondo Corp.*, 889 F.2d 459, 465 (3d Cir. 1989); *Meehan v. PPG Inds., Inc.*, 802 F.2d 881 (7th Cir. 1986); *Boggild v. Kenner Prods., Div. of CPG Prods. Corp.*, 776 F.2d 1315, 1317 (6th Cir. 1985). This continues a long history of pre-Federal Circuit regional court decisions on the doctrine. *Compton v. Metal Prods.*, 453 F.2d 38, 43 (4th Cir. 1971); *E. Venetian Blind Co. v. Acme Steel Co.*, 188 F.2d 247 (1951).

[6] "Senate Debate — 157 Cong. Rec. S1378 (Senator Kyl) (calling the amendment the "*Holmes Group* fix") *in* Patrick A. Doody, *Comprehensive Legislative History of the Leahy-Smith America Invents Act* 473-76.

## II.     No patent Act creates any cause of action in OPTO's counterclaims.

No "Act of Congress relating to patents" creates the cause of action in OPTO's patent-misuse counterclaim. To the contrary, the Answer states that OPTO's "counterclaims *arise under* Delaware common law and North Carolina statutory law." Answer at 17 (emphasis added). At no point does OPTO raise a claim under federal law, much less under an Act of Congress relating to patents.

No patent act creates any cause of action for patent misuse anyway. Courts, including the Supreme Court, have consistently held that patent misuse is a "judicially created" doctrine. *Illinois Tool Works*, 547 U.S. at 31; *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997) ("the patent misuse doctrine is an extension of the equitable doctrine of unclean hands"). And the *en banc* Federal Circuit explained that patent misuse "developed as a *nonstatutory* defense to claims of patent infringement." *Princo Corp. v. Int'l Trade Com'n*, 616 F.3d 1318, 1321 (Fed. Cir. 2010) (en banc) (emphasis added); *see also B. Braun Med., Inc.*, 124 F.3d at 1427 (the patent misuse doctrine arose "to restrain practices that did not in themselves violate any law" but "were deemed to be contrary to public policy"). Thus there is no statutory basis of the defense of patent misuse.

14

Nor has Congress transformed this judge-made doctrine into statutory patent law. All Congress has said is what is *not* patent misuse. *See* 35 U.S.C. § 271(d). By doing so, Congress cabined (rather than created) the judge-made doctrine.[7] And § 271(d) has nothing to do with the patent misuse argument in this case. So no "Act of Congress" creates the cause of action on which Honeywell relies.

## III.  No counterclaim depends on resolution of any substantial question under any patent Act.

In its Fourth Circuit motion, Honeywell instead argued that this appeal "'*necessarily depends* on resolution of a *substantial question* of federal patent law.'" Honeywell CA4 Motion 5 (quoting *Christianson*, 486 U.S. at 809). That theory fails for the same reason as above:  OPTO's counterclaim does not require resolution of *any* question under an "Act of Congress relating to patents," period. *See* Part II *supra*. But this Court also lacks jurisdiction for an independent reason:  even if there were any relevant statutory patent question, it would not be a *necessary and substantial* question.

---

[7] The legislative history of Section 271(d) confirms that the doctrine remains judge-made law. Statement of Rep. Kastenmeier *in* 9 Chisum on Patents - Patent Misuse Reform ("Patent misuse is a judicially developed doctrine of patent law").

### A.    Substantial question jurisdiction is narrow and rare.

To determine whether a claim raises a "substantial question" under a patent act, courts look "to the importance of the issue to the federal system as a whole." *AbbVie, Inc.*, 976 F.3d 327, 347 (3d Cir. 2020) (applying *Gunn v. Minton*, 568 U.S. 251, 260 (2013)) in a case involving § 1295). As *Gunn* explains, this is a "special and small category." 568 U.S. at 258. OPTO's counterclaim presents no substantial question of importance to the federal patent system generally for the same reasons that other courts have rejected similar jurisdiction.

The Supreme Court set out the modern "arising under" test in *Gunn v. Minton*. The case concerned an attorney malpractice claim. *Gunn*, 568 U.S. at 255. Plaintiff alleged that the defendants, his former attorneys, had failed to make an argument in a separate proceeding, resulting in the invalidation of his patent. *Id.* The Court "acknowledge[d] that resolution of a federal patent question [was] 'necessary' to [plaintiff's] case," *id.* at 259,[8] but found that the

---

[8] In the original action, the plaintiff had brought a patent infringement case against a company. In defense, the company cited 35 U.S.C. § 102(b) and asserted that the plaintiff's patent was invalid because the product had been "on sale" for over a year before plaintiff filed for a patent. *Gunn*, 568 U.S. at 254. In the malpractice case, Plaintiff argued that his attorneys failed to raise the "experimental use" exception to the "on sale" bar. *Id.* This exception, as

question was not *substantial* to "the federal system as a whole," *id.* at 260. A finding on this question, the Court reasoned, would be "fact-bound and situation-specific" and would, at most, be limited to the parties. *Id.* at 263 (quotation marks and citation omitted). Therefore, allowing the state court to decide the question would not threaten the "uniformity" of interpretations of federal patent acts. *Id.* at 263-64. The malpractice case did not "arise under" an Act of Congress relating to patents.

Applying *Gunn*, in *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, the Eleventh Circuit considered a case, like this one, over the scope of a patent License Agreement. 720 F.3d 833 (11th Cir. 2013) (per curiam). The Plaintiffs brought various claims, including for declaratory relief that the defendant's new product "embodied" a patent covered by the agreement. *Id.* at 840.[9] The appeal required review of the district court's patent claim

---

the Federal Circuit has explained, is not a "free-standing doctrinal exception to statutory bars." *EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1351 (Fed. Cir. 2002). Instead, it is part of "the inquiry on application of the statutory bar itself." *Id.* at 1352. Therefore, that experimental use question is part and parcel of a question under "an Act of Congress relating to patents."

[9] As this action was brought before the AIA, only the Plaintiff's claims (and not any compulsory counterclaims) were relevant to the Eleventh Circuit's jurisdictional analysis. *MDS (Canada),* 720 F.3d at 841.

construction, and "necessarily raise[d]" a claim of patent infringement under 35 U.S.C. § 271. *Id*. at 841-42, 846-48. Even so, the Eleventh Circuit found that it retained jurisdiction because this question was "heavily fact-bound" and lacked substantial importance to the federal system, as required by *Gunn. Id.* at 842 As the Eleventh Circuit held, "the Federal Circuit [does not have] exclusive jurisdiction to hear an appeal of a breach of contract claim that would require the resolution of a claim of patent infringement for the complainant to succeed." *Id.* at 837-38.

In *Federal Trade Commission v. AbbVie, Inc.*, 976 F.3d 327 (3d Cir. 2020), the Third Circuit likewise determined that it, not the Federal Circuit, had jurisdiction over a case of alleged patent abuse. The Federal Trade Commission ("FTC") sued the defendant companies alleging that they had engaged in sham patent infringement suits and had entered into anti-competitive reverse-payment agreements with another company. *Id.* at 338. Looking at the sham patent litigation theory, the only possible theory for patent jurisdiction, the Court determined that it did not present a substantial question because the theory was "purely backward looking" and would not disturb the settlements in the purportedly sham litigation cases. *Id.* at 349. Because the Third Circuit would not adjudicate the *merits* of the

infringement claims, its decision would not implicate the uniformity protected by the Federal Circuit. *Id.* at 350.

### B. There is no substantial question of patent validity or enforceability here.

As those cases illustrate, OPTO's patent misuse counterclaim raises no substantial question under any patent act.

#### 1. This appeal presents a factbound, backward-looking question of patent misuse.

First, the patent misuse question here is factbound and would not address any forward-looking issues with Honeywell's patents. Such a question is not a substantial one requiring exclusive Federal Circuit jurisdiction. *See AbbVie,* 976 F.3d at 349 ("purely backward looking" issue not substantial); *MDS (Canada),* 720 F.3d at 842 ("Because this question … is heavily fact-bound, our resolution of this question is unlikely to control any future cases.").

The appeal is limited to addressing the specific way that Honeywell tried to interpret this specific contract with OPTO. *See* Opposition to Honeywell Patent Misuse MSJ 8 ("Honeywell's contract interpretation results in patent misuse."). There are no patent claim terms to construe, no prior art to compare to a patent's claims, and no patent infringement

contentions to resolve. Even the incidental need to perform those patent-related tasks to resolve a contract dispute does not create a substantial question of patent law. *See, e.g., MDS (Canada)*, 720 F.3d at 837-38 (no Federal Circuit jurisdiction over "a breach of contract claim that would require the resolution of a claim of patent infringement"). But this contractual dispute does not even present those patent-related issues.

Indeed, OPTO's patent misuse counterclaim rises or falls, not on questions of patent law, but on the parties' competing contract interpretations. *Cf. DuVal Wiedmann, L.L.C. v. Inforocket.com, Inc.*, 374 F. App'x 482, 484 (5th Cir. 2010) ("It is well settled that if the patentee pleads a cause of action based on rights created by a contract, ... the case is not one 'arising under' the patent laws") (quoting *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997)). As Honeywell itself put it, "This is a straightforward contract dispute that boils down to a simple question: Does the License and Settlement Agreement's definition of royalty-bearing '2D Barcode Products' encompass OPTO's so-called 'laser scanning barcode readers'?" Honeywell MTD OPTO's Counterclaims 1 (Dkt. 21). When the contract's definitions of royalty-bearing products are properly construed as urged by OPTO, there is no patent misuse because the accused OPTO laser

scanners are non-royalty-bearing products within the scope of Honeywell's covenant not to sue. In contrast, Honeywell's patent misuse arises only when the contract is interpreted as urged by Honeywell and adopted by the district court below as requiring patent royalties on OPTO's sales of laser scanners based solely on their operability to perform a non-patented function.

As a practical matter, Honeywell's patent misuse is directed to a finite number of past laser scanner sales that predate OPTO's removal of the non-patented multi-row barcode decoding function. *See supra* at 5. Honeywell demands no royalties and OPTO asserts no patent misuse regarding OPTO's current laser scanner sales. The patent misuse question on the license agreement here is thus a backward-looking question without future effect. *See also Seed Co. Ltd. v. Westerman*, 832 F.3d 325, 331 (D.C. Cir. 2016) (finding that the D.C. Circuit has jurisdiction over a case that does not involve "forward-looking questions about any patent's validity"); *Westlake Services, LLC v. Credit Acceptance Corp.*, 800 F. App'x 505, 508 (9th Cir. 2020) (finding that the Ninth Circuit has jurisdiction over a claim that "will have no practical effect on the patent at issue nor will it impact the development of

federal patent law"). There is thus little or no chance that resolution of this question affects future patent litigation.[10]

### 2.    This appeal presents no question of patent enforceability.

Second, nothing about OPTO's counterclaim affects the validity or enforceability of Honeywell's patents. *See Aurafin-OroAmerica, LLC v. Fed. Ins. Co.*, 188 F. App'x 565, 566 (9th Cir. 2006) (unpublished) ("Patent misuse does not allege infringement of one's patents…. patent misuse is not a true intellectual property claim"); *E. Venetian Blind Co.*, 188 F.2d at 254 (it is "well established that even if a patentee has in the past misused his patents, he is entitled to equitable relief after the misuse has been fully abandoned"). All OPTO requests is a declaration that the Agreement's royalty provisions are not enforceable against OPTO's sales of laser scanners operable to perform

---

[10] Transferring this case would not promote uniformity in the patent misuse doctrine in any event. Patent misuse may be raised as an affirmative defense (rather than counterclaim) that creates no § 1295(a)(1) jurisdiction, and some courts hold that patent misuse may be raised *only* as an affirmative defense. *See* Robert Matthews, 4 Annotated Patent Digest § 28:3 (citing cases). So the regional courts of appeals will continue to have jurisdiction over patent misuse affirmative defenses in any event. OPTO pled patent misuse as both an affirmative defense and counterclaim as a belt-and-suspenders.

the non-patented function of decoding multi-row bar-space symbols. *See Bd. of Regents Univ. of Tex. v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1362 (Fed. Cir. 2005) ("special attention [should be] directed to the relief requested").

In its Fourth Circuit motion, Honeywell hung its hat on the false notion that the patent misuse issue in this appeal is about "patent unenforceability." Honeywell CA4 Motion 4-9. But there are no active patents to be enforced here. Honeywell demands royalties on OPTO laser scanner sales based solely on functionality once claimed in *expired* or *abandoned* Honeywell patents. *See supra* at 6-7; *see also Chandler v. Phoenix Servs. LLC*, 1 F.4th 1013, 1016 (Fed. Cir. 2021) (patent question not substantial where "[t]he enforceability of the patent is no longer at issue").

In those cases, the Supreme Court prescribes that the remedy is to decline enforcement of contract royalty provisions requiring post-expiration patent royalties. *See Brulotte v. Thys Co.*, 379 U.S. 29, 32 (1964) ("a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se*"); *see also Kimble*, 576 U.S. 446. That is why OPTO has repeatedly stated that the remedy for Honeywell's patent misuse is holding *the contract* royalty provisions unenforceable as to OPTO's sales of laser scanners—not holding any *patent* unenforceable. *See supra* at 5.

23

Honeywell rested its argument for Federal Circuit jurisdiction on the Answer's reference to "patent unenforceability," which Honeywell supposed was dispositive under the well-pleaded complaint rule. Honeywell CA4 Motion 4 n.2. Not so. The well-pleaded complaint rule merely determines jurisdiction based on the necessary elements of the claim, rather than "'anything alleged in anticipation or avoidance of defenses.'" *Christianson*, 486 U.S. at 809. But that rule does *not* require courts to turn a blind eye to the record revealing the *nature* of that claim. "Rather, 'in the context of possible federal-question jurisdiction,' it is appropriate for the court to conduct an examination of the record as a whole 'to reveal the true nature of the plaintiff's claim.'" *Old Dominion Elec. Co-op v. PJM Interconnection, Inc.*, 24 F.4th 271, 284 n.9 (4th Cir. 2022) (quoting 14C Charles A. Wright et al., *Federal Practice & Procedure* § 3734 (rev. 4th ed. 2021)) (holding it proper to "consider[] matters outside the pleadings" in jurisdictional analysis). Here, the record confirms that the patent misuse issue in this case (which is based on Honeywell's allegations of a breach of *contract*) concerns the unenforceability of a *contract.* Honeywell's theory of Federal Circuit jurisdiction thus fails because the record confirms there is no question of patent enforceability.

## CONCLUSION

For these reasons, this Court should dismiss these appeals for lack of appellate jurisdiction under 28 U.S.C. § 1295(a)(1). As Honeywell argued in its Fourth Circuit motion, dismissal is appropriate because identical appeals are already pending in the Fourth Circuit. Honeywell CA4 Motion 9-10. In the alternative, the Court should transfer the appeals to the Fourth Circuit for consolidation with the appeals pending there.

Dated: November 24, 2023          Respectfully submitted,

                                  */s/ Brian D. Schmalzbach*

                                  Brian D. Schmalzbach
                                  McGuireWoods LLP
                                  Gateway Plaza
                                  800 East Canal Street
                                  Richmond, VA 23219
                                  (804) 775-4746
                                  bschmalzbach@mcguirewoods.com

                                  *Counsel for OPTO Electronics Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

1.      This motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 5,168 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, 14-point Book Antiqua font using Microsoft Word.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2023, the foregoing was filed with the Clerk of the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF system, which will also serve counsel of record.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach
